**UNITED STATES of America, Appellee,**

v.

**Ronald MOSKOWITZ and Jan R. Kirk, Defendants–Appellants.**

**Docket Nos. 99–1745(L), 99–1769(CON).**

United States Court of Appeals, Second Circuit.

Argued: May 1, 2000

Decided: May 25, 2000

Alan M. Dershowitz, Cambridge, Massachusetts (Amy Adelson and Nathan Z. Dershowitz, Dershowitz, Eiger & Adelson, P.C., New York, New York, of counsel), for Defendant–Appellant Ronald Moskowitz.

Jess Fardella, Lankler Siffert & Wohl LLP (Lisa A. Baroni, of counsel), New York, New York, for Defendant–Appellant Jan R. Kirk.

David Raymond Lewis, Assistant U.S. Attorney (Mary Jo White, United States Attorney for the Southern District of New York, George S. Canellos, Assistant United States Attorney, of counsel), New York, New York, for Appellee.

Before: WINTER, Chief Judge, FEINBERG, and CABRANES, Circuit Judges.

PER CURIAM:

Ronald Moskowitz appeals from his conviction by a jury and his sentence entered by Chief Judge Mukasey. Jan Kirk appeals from his sentence entered pursuant to his guilty plea. Moskowitz was convicted of one count of securities fraud and one count of conspiracy to commit various securities fraud offenses. Kirk pleaded guilty to the same conspiracy; to causing false filings to be made with the Securities and Exchange Commission ("SEC"); to a conspiracy to obstruct justice, suborn perjury, and make false statements to the SEC and United States Attorney's Office; and to making false statements and representations to the United States Attorney's Office. The district court sentenced Moskowitz to 97 months' imprisonment, three years' supervised release, and a fine and special assessment; and Kirk to 63 months' imprisonment, three years' supervised release, and a fine and special assessment. We affirm.

We view the evidence in the light most favorable to the government. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Moskowitz was Chief Executive Officer and Kirk Chief Financial Officer of Ferrofluidics Corporation ("Ferro"). In the late 1980s, Moskowitz got into financial trouble and needed to sell off a sizable portion of his equity stake in Ferro. To that end, he parked his holdings in a "family trust," subdivided these trust holdings among his grandchildren to avoid SEC reporting requirements, and sold millions of shares of stock, a fact unknown to the Ferro's public shareholders or to the market generally.

During this time, Moskowitz and Kirk executed a series of frauds designed to artificially inflate share prices, a fraud from which Moskowitz—as a seller of Ferro's stock—reaped the primary gains. Among these frauds were paying off an investment reporter and stock analyst to talk up the company; executing a sham private placement in which Moskowitz and Kirk found complicit or unknowing buyers who actually invested no capital in the corporation; executing a sham $12 million purchase order to inflate expectations; and falsifying public accounts to further these and other scams. Kirk also obstructed the ultimate SEC investigation into the wrongdoings, in part by sending anonymous letters to the SEC that falsely accused Moskowitz of various offenses for which Kirk was primarily responsible.

■■■ On appeal, Moskowitz argues principally that the district court's decision to admit Kirk's plea allocution was improper under the Federal Rules of Evidence, *see* Fed.R.Evid. 804(b)(3) (permitting exception to hearsay rule for statement against interest that "so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true"), and the Confrontation Clause, *see* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). We review the court's evidentiary decision for abuse of discretion and its application of constitutional standards *de novo*. *See, e.g., United States v. Naiman*, 211 F.3d 40, 51 (2d Cir.2000) ("Evidentiary rulings are reviewable only for abuse of discretion."); *United States v. Cruz–Flores*, 56 F.3d 461, 463 (2d Cir.1995) ("We review the district court's application of constitutional . . . standards de novo.").

■■ In his plea allocution, Kirk admitted to being involved in a conspiracy and participating with "another employee" in each of the predicate acts of the conspiracy. The government consented to redacting the only portion of the allocution in which Kirk had shifted blame, *i.e.*, when he had stated that he had acted "with the agreement *and at the direction* of another employee at Ferrofluidics." Immediately after admitting the Kirk allocution, the district court gave a clear limiting instruction:

Please understand ... that you may consider [Kirk's allocution] only on the following two issues: (1) whether there was a conspiracy or scheme to commit securities fraud, to make false statements and submit false documents to the [SEC], to lie to the auditors, and to create false entries in Ferrofluidics' books and records; and (2) what if anything Jan Kirk did in order to further the objects of that conspiracy if you find that it existed.

However, the question of whether the defendant on trial, Dr. Moskowitz, was also a member of that conspiracy or the scheme alleged in the indictment is an issue for which you will have to rely on other evidence. There is no evidence in these statements naming any other defendant or co-conspirator.

If you find, based in part on these statements, that a conspiracy or a scheme as charged in the indictment existed, you must decide as a separate question whether the defendant on trial, Dr. Moskowitz, was a part of the alleged conspiracy or scheme, based entirely on the other evidence in the case. There is nothing in these statements that answers that question one way or the other.

Given that the allocution was clearly against Kirk's penal interest, that the only blame-shifting portion of the allocution was redacted, and that the court gave a limiting instruction that we must presume the jury followed, *see, e.g., United States v. Ebner,* 782 F.2d 1120, 1126 (2d Cir.1986) (upholding admission of evidence against Fed.R.Evid. 403 challenge in light of limiting instructions and "presumption that juries will follow [them]") (quoting *Watkins v. Sowders,* 449 U.S. 341, 347, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981)), the admission of Kirk's plea allocution under Rule 804(b)(3) was within the district court's discretion.

■ We also see no error to the admission of the plea allocution under the Confrontation Clause. The Supreme Court's plurality opinion in *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), did not change the established rule that "when a declarant is unavailable to testify at trial, his or her hearsay statement is sufficiently dependable to allow its untested admission against an accused when (1) the evidence falls within a firmly rooted hearsay exception or (2) it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statements' reliability," *United States v. Gallego,* 191 F.3d 156, 167 (2d Cir.1999) (internal alterations and quotation marks omitted), *cert. denied,* —— U.S. ——, 120 S.Ct. 961, 145 L.Ed.2d 833 (2000). *See Lilly,* 527 U.S. at 122–24, 119 S.Ct. 1887 (plurality opinion of Stevens, Souter, Ginsberg, and Breyer, JJ.); *id.* at 144–48, 119 S.Ct. 1887 (concurring opinion of Rehnquist, C.J., and O'Connor and Kennedy, JJ.). Although we have declined to decide whether a declaration against interest admitted under Rule 804(b)(3) is a "firmly rooted" exception to the hearsay rule, we have found "particularized guarantees of trustworthiness" where, *inter alia,* (1) the plea allocution "undeniably subjected [the defendant] to the risk of a lengthy term of imprisonment, even if it was also made in the hope of obtaining a more lenient sentence"; (2) "the allocution was given under oath"; and (3) "the district court instructed the jurors that they could consider [the defendant's] allocution only as evidence that a conspiracy existed and not as direct evidence that defendants were members of that alleged conspiracy or that they were otherwise guilty of the crimes charged against them." *Gallego,* 191 F.3d at 167 (internal alterations and quotation marks omitted). The instant case having the same "particularized guarantees of trustworthiness" found sufficient in *Gallego,* there was no Confrontation Clause violation in the admission of the plea allocution.

■ Moskowitz contends that even if the plea allocution was properly admitted

into evidence, his Confrontation Clause rights were violated by the admission of an addendum to Kirk's main allocution in which he clarified: "In response to the area concerning the private placement, my statement was that I had worked in conjunction with another employee. The addition is that other employee was an officer of the company." However, Moskowitz was offered the opportunity to redact this portion of the allocution and for strategic reasons specifically requested that the statement be included with the main allocution. Consequently, Moskowitz cannot now argue that this statement unfairly implicated him. *Cf. Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (noting that trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Moreover, any harm from admission of the addendum was mitigated by the district court's limiting instruction.

■ Similarly, Moskowitz's contention that his Confrontation Clause rights were violated by the government's rebuttal summation is unpersuasive. On his summation, Moskowitz argued that the Kirk allocution's reference to "another employee" implicated Ferro employee Steve Morin, but not Dr. Moskowitz, and that the allocution should be read as referring to Dr. Moskowitz only inasmuch as it referred to the "officer" whom Kirk had falsely implicated. The district court properly permitted the government to give a limited rebuttal to this claim. In that rebuttal, the government directed the jury's attention to the actual allocution and pointed out that nothing in the allocution would suggest that the "other employee" was Steve Morin and that nothing in the allocution could be read to absolve Moskowitz from guilt as merely the "officer" falsely implicated by Kirk's previous perjury. Moskowitz did not object to the prosecution's statements, and no plain error resulted therefrom.

■ Finally, we agree with the district court that, even assuming *arguendo* that a violation of Confrontation Clause rights occurred, such error "was harmless beyond a reasonable doubt in view of the direct and overwhelming evidence of Moskowitz's guilt, including the testimony of co-conspirators who themselves were involved in committing the charged crimes with Moskowitz, at Moskowitz's direction, and for Moskowitz's benefit." Transcript of September 9, 1999 Hearing, at 6–7; *cf. Gallego,* 191 F.3d at 168 ("Even were we to conclude that the district court erred by admitting [the] plea allocution into evidence, the record before us makes it clear that any such error would have been harmless.").

■ Moskowitz also challenges the district court's decision not to permit Moskowitz to elicit testimony going to Kirk's reputed sexual history, to his reputation for not following orders at Ferro, to his reputed "management style" at a prior company, or to his specific actions that might implicate his credibility. Rule 806 renders Rule 608's impeachment rules applicable to a declarant's out-of-court statements. Under Rule 608, "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but ... the evidence may refer only to character for truthfulness or untruthfulness, and [s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, ... may not be proved by extrinsic evidence." Fed.R.Evid. 608.

The district court did permit Moskowitz to introduce substantial evidence impeaching Kirk. Moreover, the government specifically conceded Kirk's untrustworthiness. Furthermore, the jury was aware, through the plea allocution, that Kirk had previously perjured himself. In this light, it was easily within the district court's broad discretion to limit Moskowitz's ability to impeach Kirk under Rule 608. *See, e.g., United States v. Salameh,* 152 F.3d 88, 131 (2d Cir.1998), *cert. denied,* 525 U.S.

1112, 119 S.Ct. 885, 142 L.Ed.2d 785 (1999) (noting that district court judges have "wide latitude" under Confrontation Clause to "impose reasonable limits" on cross examination and limit "interrogation that is repetitive or only marginally relevant").

■ Moskowitz also argues that the district court erred in not permitting him to read aloud from false accusation letters targeting Moskowitz that Kirk had anonymously sent to the SEC. The letters were, however, admitted into evidence, with the exception of one letter that the defense itself objected to. There was thus no error in the district court's discretionary ruling limiting the manner in which the evidence was presented to the jury. *See* Fed.R.Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time . . . .").

■ Moskowitz also objects to the district court's decision to admit a videotaped deposition of a government witness who was suffering from a debilitating spinal condition. Under Rule 804(a)(4), testimony taken by deposition may be introduced in "situations in which the declarant . . . is unable to be present or to testify at the hearing because of . . . then existing physical or mental illness or infirmity." Fed. R.Evid. 804(a)(4). Moskowitz argues that the witness actually could have been flown in. However, the district court's determination is again reviewable only for abuse of discretion, and we see no such abuse in the court's factual determination that the witness was unable to testify in person due to physical infirmity. *Cf. United States v. Bell,* 500 F.2d 1287, 1290 (2d Cir.1974) ("[W]e think that in the first instance it is up to the district judge to decide if the witness is truly 'unavailable'—a finding that we would not be quick to overturn.").

■ Moskowitz also argues that the district court erred in not using his proposed jury charge, which stated in relevant part:

> Some of the alleged misstatements in this case are, in one form or another, projections of future performance by Ferrofluidics. Projections are statements of opinion, not fact, and are not guarantees. They are simply predictions or forecasts about a company's future earnings.
>
> If you find that any of the alleged misstatements are projections of future performance they are not material as a matter of law, because they lack specificity and guarantees of future performance, and the government has failed to prove the crimes charged . . . with respect to those statements.

The district court instead used a standard charge on fraudulent representations and materiality. At the charge conference, Moskowitz made several objections and requests. However, he never requested that this language be used and never objected to the district court's use of the standard charge on fraudulent representations and materiality. Nor did Moskowitz take exception to the standard charge as given to the jury.

■ Having failed to object, Moskowitz cannot now claim error. *See* Fed. R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."). Nor is he entitled to reversal for plain error, *see* Fed.R.Crim.P. 52(b). It is hardly clear that Moskowitz's draft charge "accurately represented the law in every respect," *United States v. Smith,* 198 F.3d 377, 386 (2d Cir.1999). *See Ballone v. Eastman Kodak Co.,* 109 F.3d 117, 124 (2d Cir.1997) ("Under the securities laws, an assurance about the future that by necessary implication misrepresents present facts is clearly action-

able."). Moreover, given the substantial evidence that Ferro's *current* books misrepresented its financial condition, Moskowitz was in any event not prejudiced by the failure to use his requested instruction.

■ Moskowitz also argues that the district court improperly calculated loss under § 2F1.1 of the sentencing guidelines, *see* United States Sentencing Guidelines ("U.S.S.G.") § 2F1.1(b)(1). His principal argument is that the court improperly relied on the settlement of consolidated class action claims against Ferro and its officers and directors.

We review the district court's findings of fact for clear error and reverse only if left "with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). If any permissible view of the evidence supports the fact finder's determination, we affirm. *See Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

A permissible view of the evidence easily supports the district court's determination. The government introduced evidence that estimated the loss at from $7.1 million to $18.3 million based on the decline in Ferro's share price upon the revelation of fraud. The district court also had an analysis from the class action plaintiffs' expert determining loss to the plaintiffs to be $30 million. In light of the ample evidence that would have permitted a reasonable fact finder to determine actual losses to be *higher* than the range of $5 million to $10 million that the district court found applicable to Moskowitz, the court was well within its discretion in reaching its loss calculation.

■ Finally, both Kirk and Moskowitz argue that the district court erred in applying a two-level enhancement for abuse of trust under U.S.S.G. § 3B1.3. Under section 3B1.3, "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense," a two-level enhancement is warranted. The enhancement applies to positions "characterized by professional or managerial discretion (*i.e.,* substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3, comment. (n.1). We have determined that "the discretion must be entrusted to the defendant *by the victim.*" *United States v. Broderson,* 67 F.3d 452, 456 (2d Cir. 1995) (emphasis added) (holding that government supplier who failed to comply with statutory disclosure requirements for doing business with government was not in position of trust vis-a-vis government); *see also United States v. Jolly,* 102 F.3d 46, 48 (2d Cir.1996) ("Limiting an enhancement for abuse of trust to the misuse of discretionary authority entrusted by the victim or on the victim's behalf is consistent with the examples given in the Commentary."). Moreover, "[t]his adjustment may not be employed if an abuse of trust ... is included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3.

Among the primary victims of the instant fraud were Ferro's shareholders, who were misled by the fraudulent inflation of Ferro's share price and the concealment of Moskowitz's sale of $14 million of Ferro stock. These frauds prevented them from making informed decisions regarding company officers and the propriety of retaining or buying more Ferro stock. These victims were public shareholders, who necessarily and typically entrust their corporate officers with fiduciary duties; they are thus clearly distinguishable from the arms' length creditors we considered in *Jolly.* Cf. *Jolly,* 102 F.3d at 48–49 ("A corporation's management of course owes a fiduciary duty to shareholders, and the looting of a corporation would likely lead to an enhancement for abuse of trust if not included in the particular offense characteristic." (citation omitted)). Because abuse of a position of trust is not a specific offense characteristic and is not included in the base offense level, *see* 15

U.S.C. § 78ff; U.S.S.G. § 2F1.1, the abuse of trust enhancement was properly applied.

We therefore affirm. Appellant's motion for release on bail pending appeal is denied as moot.