UNITED STATES of America,
Appellee,

v.

Karl DONOVAN, Derek Shapiro, also known as David I. Shapiro, Aaron Sandstrom, Donald Dexter Brooks, Ronald Ferlisi, Edward Talmany, Daniel Sandstrom, Daniel Sangemino, Jay Labella, James Montes, Marlin Montes, Steven Alexander, Keith Wiggins, Salvatore Tavolacci, Frederick Wall, Defendants,

Josette Odenhal, Greg Murray, Carlton Crawford, Defendants–Appellants.

Nos. 01–1403, 01–1406, 01–1623.

United States Court of Appeals, Second Circuit.

Jan. 9, 2003.

Martin R. Stolar (Robert J. Boyle), New York, N.Y., for Appellant Carlton Crawford, of counsel.

Robert Preuss, Abate & Preuss (Camille M. Abate), New York, N.Y., for Appellant Greg Murray, of counsel.

Robert L. Moore, Hempstead, N.Y., for Appellant Josette Odenhal.

PRESENT: NEWMAN, KEARSE, and SACK, Circuit Judges.

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 9th day of January, two thousand and three.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments of the district court be, and they hereby are, AFFIRMED as to Crawford and Murray, and the appeal is dismissed as to Odenhal.

Appellants Crawford, Murray, Odenhal, and fifteen others were charged in a fourteen-count indictment filed on May 24, 2000. Crawford, Murray, and Odenhal were all charged under count one with conspiracy to commit mail, wire, and securities fraud, in connection with a scheme to sell stock in five sham companies through

David C. Esseks, Assistant United States Attorney for the Southern District of New York (James B. Comey, United States Attorney, Gary Stein, Assistant United States Attorney), New York, N .Y., for Appellee, of counsel.

fraudulent private placements, in violation of 18 U.S.C. § 371. Crawford, Murray, and Odenhal were charged under counts two and three with securities fraud, in connection with the sale of stock in, respectively, First Fidelity Financial Corp. and Exchange Online, Inc., through fraudulent private placements, in violation of 15 U.S.C. §§ 77q(a) and 77x, as well as 18 U.S.C. § 2. Count four charged Murray alone with mail fraud, in connection with a sale of $1000 worth of stock in First Fidelity Financial Corp. through a fraudulent private placement, in violation of 18 U.S.C. §§ 1341 and 1342. The remaining counts charged defendants other than the appellants with substantive mail-fraud offenses based on their alleged solicitation of particular investments.

## I. Carlton Crawford and Greg Murray

On January 16, 2001, Murray and Crawford proceeded to trial alone.[1] On February 2, 2001, the jury convicted Murray on all four counts in which he was charged; the jury convicted Crawford on count one only, acquitting him of the substantive securities fraud charges in counts two and three. On July 17, 2001, the district court sentenced Murray to concurrent terms of twenty-seven months' imprisonment, three years' supervised release, $105,000 in restitution, and a $400 special assessment. On November 29, 2001, the district court sentenced Crawford to eighteen months' imprisonment, three years' supervised release, $30,500 in restitution, and a $100 special assessment. Both defendants appeal their convictions on four grounds, and Crawford makes a fifth argument pertaining only to him.

## A. The Evidence Binders

██ The defendants argue that the district court committed reversible error by permitting the prosecution to distribute to the jury evidence binders containing exhibits that were not yet admitted and at least one item that was never admitted. The defendants contend that this procedure constituted structural error, and, alternatively, that the use of the evidence binders was prejudicial error.

Structural errors have been found in "a very limited class of cases" that lack the "basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (internal quotation marks and citations omitted). Even the erroneous *admission* of evidence warrants only harmless error analysis. *See, e.g., id.* at 18, 119 S.Ct. 1827; *U.S. v. Kiszewski,* 877 F.2d 210, 216 (2d Cir.1989). The procedure followed by the district court did not rise to the level of structural error.

██ Moreover, the district court did not abuse its discretion by permitting the use of these evidence binders at trial. District judges have wide discretion to manage the conduct of trials before them. *United States v. Carson,* 52 F.3d 1173, 1188 (2d Cir.1995). This Court has "noted repeatedly that a district court can greatly assist a jury in comprehending complex evidence through the use of intelligent management devices." *Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003, 1008 (2d Cir. 1995), *vacated on other grounds,* 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996). In this case, the defense attorneys

---

1. The sixteen other defendants pled guilty to charges in the indictment or to superseding charging instruments before trial.

were given copies of the evidence binders prior to trial, and the jurors were not permitted to take the binders into the jury room during the trial or deliberations. The district judge instructed the jury to look only at the exhibits that were admitted, and we assume that jurors follow instructions, *see, e.g., Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987); *United States v. Mc-Donough*, 56 F.3d 381, 387 (2d Cir.1995).

Insofar as defendants complain that the binder included at least one document that was not admitted into evidence, we see no error. Defendants have identified only one such document, Exhibit 140, and the record does not indicate that any juror looked at that document.

The defendants identify one instance when jurors actually looked at a piece of evidence that was not yet admitted. Exposure to extra-record evidence creates a presumption of prejudice that the Government must overcome. *United States v. Greer*, 285 F.3d 158, 173 (2d Cir.2002). On the first day of trial, Murray's counsel objected because he observed two jurors looking at Exhibit 31E when they were looking for Exhibits 31A–D (Tr. 115). Exhibit 31E was not tabbed separately from the other parts of Exhibit 31, which Judge Chin admitted was a "mistake." (Tr. 117.) Exhibit 31E was later admitted into evidence and viewed by the jurors (Tr. 575, 578.), and no argument has been made that the timing of the jury's exposure to this evidence caused prejudice. Moreover, in other circumstances, the "practicalities of proof" permit trial judges to admit exhibits before their admissibility has been established. *See United States v. Ziegler*, 583 F.2d 77, 80 (2d Cir.1978). The jury's erroneous exposure to this evidence prior to its admission was therefore harmless.

### B. The Admission of the Plea Allocutions

■ The defendants contend that the admission of the plea allocutions of three co-conspirators—Daniel Sangemino, Steven Alexander, and Ronald Ferlisi—was an abuse of discretion and a violation of their Due Process and Confrontation Clause rights. This Court has repeatedly upheld the admission under Rule 804(b)(3) of a co-conspirator's guilty plea allocution to prove the existence of the charged conspiracy. *See, e.g., United States v. Petrillo*, 237 F.3d 119, 122–23 (2d Cir.2000); *United States v. Moskowitz*, 215 F.3d 265, 269 (2d Cir.) (per curiam), *cert. denied*, 531 U.S. 1014, 121 S.Ct. 571, 148 L.Ed.2d 489 (2000). Although a plurality of the Supreme Court recently stated that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule," *Lilly v. Virginia*, 527 U.S. 116, 134, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), this Court has confirmed that admission of plea allocutions may survive a Confrontation Clause challenge when the allocutions contain "particularized guarantees of trustworthiness," *Petrillo*, 237 F.3d at 122 (internal quotation marks and citation omitted). The guarantees of trustworthiness that we have identified, *see Moskowitz*, 215 F.3d at 269, were present here. The plea subjected the conspirators to "the risk of a lengthy term of imprisonment," *id.* (internal quotation marks and citation omitted), because they pled guilty to the fraud conspiracy charge, subjecting them to a statutory maximum term of five years' imprisonment under 18 U.S.C. § 371. The allocutions were given under oath. *See Moskowitz*, 215 F.3d at 269. And the trial judge gave clear limiting instructions, *see id.*, both before the plea allocutions were read into evidence and in his final charge to the jury.

■ In addition, there is no merit in the defendants' argument that the plea allocutions were not admissible as self-inculpatory statements because they referred to the acts of "others," "one or more persons," and "me and my coconspirators." The references to "others" were relevant to the existence of a conspiracy, and to the speakers' participation in the conspiracy, and were therefore self-inculpating. In contrast to the situation in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), where there were only two conspirators, *id.* at 596–98, 114 S.Ct. 2431, here there were several plea allocutions admitted at trial, so there was no implication that the "others" were the defendants on trial. Moreover, Judge Chin instructed the jury not to consider the allocutions for this purpose, specifically noting that "[t]here is no evidence in these three guilty plea allocutions naming defendants Carlton Crawford and Greg Murray."

■ The defendants also assert that the plea agreements should have been released to them in conjunction with the admission into evidence of the plea allocutions. Even if the Government should have handed over the plea agreements, however, the error was harmless. The plea agreements, which the Government has submitted to this Court on appeal, contain nothing showing prejudice or indicating that the plea allocutions were not statements against penal interest. Moreover, the plea allocutions were offered only for the purpose of demonstrating the existence of a conspiracy, not to establish the participation of the defendants in that conspiracy, and the jury is expected to follow the limiting instruction to that effect. *See, e.g., Greer*, 483 U.S. at 766 n. 8, 107 S.Ct. 3102; *McDonough*, 56 F.3d at 387. Thus, it appears clear beyond a reasonable doubt that the failure to release the plea agreements did not affect the outcome of the trial. *See United States v. Tropeano*, 252 F.3d 653, 659 & n. 6 (2d Cir.2001).

## C.  The Tavolacci Ledger and the Donovan List

■ The defendants argue that the district court abused its discretion by admitting into evidence the so-called Tavolacci ledger and Donovan list. Both documents were admissible, however, as co-conspirators' statements made in furtherance of the conspiracy. *See* Fed.R.Evid. 801(d)(2)(E). To admit a statement under this rule, we have said that the district court "must find (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Maldonado–Rivera*, 922 F.2d 934, 958 (2d Cir.1990).

These three requirements were met for both documents. First, there was clearly a conspiracy—several of its members pled guilty to participating in it. Second, Tavolacci, Donovan, Murray, and Crawford were members of it. Tavolacci and Donovan were among the conspirators who pled guilty, so their roles are unquestioned. Murray was connected to the conspiracy by Follick's testimony, by documents recovered from the search of the conspiracy site written in Murray's handwriting, and by the testimony of Savilla Bare who received a cold call from someone calling himself Follick but claiming Murray's birthday. Crawford was connected to the conspiracy by tape recordings of conversations between himself and Follick concerning their illegal work and by testimony of

Follick and James Montes. Finally, Follick testified that the ledger and the list were both made during the conspiracy, as ways to keep track of the commissions to the coldcallers, thereby indicating that the documents furthered the operations and efficiency of the conspiracy. The documents were therefore admissible as co-conspirator's statements under Rule 801(d)(2)(E).

### D. The Jury Instructions on Omissions

The defendants argue that the district court erroneously instructed the jury that the defendants could be convicted based on omissions, even in the absence of a fiduciary duty running from them to the persons to whom they made the alleged misrepresentation. But Section 17(a) of the Securities Act of 1933, under which the defendants were charged, plainly indicates that a duty to disclose may arise during a securities transaction if omission of a material fact would make another statement misleading. 15 U.S.C. § 77q(a). In addition, in examining the mail and wire fraud statutes, 18 U.S.C. §§ 1341 *et seq.*, under which Murray was convicted, this Court has held that a fiduciary relationship is not necessary for a duty to disclose to arise; it is enough that an omission make an affirmative statement misleading. *See United States v. Autuori*, 212 F.3d 105, 118–19 (2d Cir.2000). The defendants' failure to mention the 30% commissions they received rendered misleading their investment recommendations. Moreover, contrary to the defendants' argument that the 30% commission was not a "material" fact, investors testified at trial that they would not have invested if they had known about the 30% commissions. This Court has said that an omitted fact is material if it is substantially likely that a reasonable investor "would consider it important in making an invest-ment decision." *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir.1991). Finally, the defendants mistakenly invoke 15 U.S.C. § 77d(2) to argue that private placements of the type involved in this case are exempt from the requirement of the Securities Act that commissions be disclosed. Section 77d(2) creates an exemption from the requirements of § 77e, which concerns the sale of unregistered securities, but the defendants were convicted under an unrelated provision of the Securities Act: § 77q(a). Thus, after a *de novo* review of the jury instructions, *see Tropeano*, 252 F.3d at 657–58, we conclude that the defendants' argument that the instructions were erroneous fails.

### E. The Evidence of Crawford's Prior Acts

■ Crawford contends that the district court abused its discretion by admitting evidence of his prior similar stock fraud conduct pursuant to Rule 404(b). Fed. R.Evid. 404(b). This Court has adopted an "inclusionary" approach to the admission of other acts evidence, meaning that "other acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity." *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir.1988). Similar act evidence may be admitted to show knowledge or intent, *see* Fed.R.Evid. 404(b), but the defendant can exclude the evidence by removing those issues from the case. *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir.1980). This Court has made clear that, although a defendant need not actually stipulate to the issue, such as knowledge or intent, to avoid "other acts" evidence of such mental states, the defendant must "express a decision" not to make it an issue, *United States v. Colon*, 880 F.2d 650, 659 (2d Cir.1989) (internal quotation marks and ci-

tation omitted), and he or she must give "sufficiently clear notice [of that decision] to the Court and the government," *United States v. Tarricone*, 996 F.2d 1414, 1422 (2d Cir.1993). Crawford failed to express a decision to remove intent or knowledge from the case. On the contrary, Crawford's counsel argued in his opening that Crawford disputed "[e]very single thing in that indictment" and intended "to put the government to its burden of proof."

## II. Josette Odenhal

On December 12, 2000, Odenhal pled guilty to count one of the indictment, which charged her with conspiracy to commit mail, wire, and securities fraud in violation of 18 U.S.C. § 371. After a hearing on May 10, 2001, the district court decided *sua sponte* to depart downwardly from the guidelines range of ten to sixteen months' imprisonment. The district court sentenced Odenhal to three years' probation, including ten months in community confinement, to mandatory alcohol and mental health treatment, and to $25,000 in restitution. Judgment was entered on June 7, 2001. Odenhal filed a notice of appeal with this Court on July 23, 2001.

On May 24, 2002, Odenhal's counsel filed a brief, pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), arguing that there were no non-frivolous issues on appeal, and asking to be relieved as counsel. On June 5, 2002, the Government moved for dismissal of the appeal on the grounds of untimeliness or waiver of the right to appeal, or for summary affirmance.

■ Under the Federal Rules of Appellate Procedure, a criminal defendant must file his or her notice of appeal within ten days of the entry of judgment. Fed. R.App. P. 4(b)(1). This requirement is mandatory and jurisdictional. *See United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960). Rule 4(b)(4) permits a district court, upon a finding of excusable neglect or good cause, to extend the time to file a notice of appeal for a period not longer than thirty days, Fed. R.App. P. 4(b)(4), and this Court has held that the district court should treat notices of appeal filed after the ten-day deadline, but within the additional thirty-day window, as requests for extensions of the filing period, *United States v. Batista*, 22 F.3d 492, 493 (2d Cir.1994) (per curiam). Odenhal filed her notice of appeal forty-six days after the entry of judgment. Her notice of appeal was therefore untimely and ineligible for consideration as a motion for an extension of the filing period. Thus, we dismiss the appeal for lack of jurisdiction. Because Odenhal's appeal presents no non-frivolous issues for consideration by this Court, we grant her attorney's motion to be relieved as counsel.

For the foregoing reasons, the judgments of the district court are hereby AFFIRMED, as to Crawford and Murray, and the appeal is dismissed as to Odenhal.