**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anthony BOONE, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Victor Darnell Herd, Defendant–Appellant.**

**Nos. 99–50225, 99–50411.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted as to 99–5022, Sept. 14, 2000, Submitted[1] as to 99–50411·

Filed Oct. 18, 2000

Kenneth M. Stern, Woodland Hills, California, for the defendants-appellants.

---

1. The panel unanimously finds this case suitable for decision without oral argument.

Fed. R.App. 34(a)(2).

**1232**

Nancy B. Spiegal, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: T.G. NELSON, TASHIMA and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

Unbeknownst to Lamar Williams, his girlfriend Tarchanda Cunningham surreptitiously tape recorded him implicating himself and Defendant Anthony Boone in an armed robbery. Over Boone's hearsay and Confrontation Clause objections, Williams's out-of-court statements were received in evidence against Boone as statements against interest. At the time the recording was made, Williams was confiding in his girlfriend/co-conspirator and had no motive to shift the blame to someone else or to minimize his own culpability. Williams's lack of exculpatory motive while inculpating himself provides the circumstantial guarantee of reliability that underpins the hearsay exception for statements against interest, and distinguishes this case from the Confrontation Clause problem in *Lilly v. Virginia*. We affirm.[2]

**I.**

Boone was charged with conspiracy to commit robbery, robbery, and use of a firearm during a crime of violence all in connection with a series of armed robberies of Oriental rug stores in the Los Angeles area and northern California.[3] It was the government's theory that these robberies were masterminded by Lamar Williams, who was charged as a co-conspirator but remains at large. According to the government's evidence, Boone was an active participant in the armed robbery of the Conway of Asia rug store in Carmel, California. The government offered evidence to show that while armed, Boone and one of the other conspirators bound the store's employees with duct tape and with Williams's help, made off with over $200,000 in rugs.

Around the time of the Carmel robbery, Tarchanda Cunningham, a U–Haul employee who rented out trucks used during some of the rug store robberies, was arrested by Newport Beach police and charged with conspiracy to commit a robbery of a rug store in that city. Shortly after her arrest, Cunningham began cooperating with the FBI in its investigation of the rug store robberies. Over the next six months, Cunningham surreptitiously tape recorded numerous conversations with her boyfriend, Lamar Williams, in which he implicated himself and others in past and ongoing crimes. In a recording made on June 16, 1994, Cunningham secretly recorded a conversation with Williams in which he gave a detailed account of the Carmel rug store robbery.

In that recording made unbeknownst to him, Williams reminisced to Cunningham about the Conway of Asia store robbery. He remembered how President Bush had been playing golf nearby at the time and that there were a lot of extra police around. Williams recalled how he told the others that they probably only had five minutes for the robbery due to the store alarm timer which would probably automatically reset itself and notify the police. He recalled how Boone had shown "a lot of heart" during the robbery and had told a female customer who had wandered into the store during the robbery that the store was closed for remodeling. He told Cunningham that money from the robbery had been used to pay her bail.

---

2. All other issues raised by defendants on appeal were addressed in a memorandum deposition filed contemporaneously.

3. Conspiracy to interfere with interstate commerce by robbery (18 U.S.C. § 1951), interference with interstate commerce by robbery (same), and use of a firearm during a crime of violence (18 U.S.C. § 924(c)).

The jury found Boone guilty on all three counts. Boone filed a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

■ The lower court admitted Williams's taped statements as a statement against interest, an exception to the hearsay rule under Federal Rule of Evidence 804(b)(3). Boone argues that admission of the statement violated his right under the Sixth Amendment to confront and cross-examine Williams, the hearsay declarant. Boone's contention relies primarily on the Supreme Court's decision in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).

■ Alleged violations of the Confrontation Clause are reviewed de novo. *See United States v. Peterson*, 140 F.3d 819, 821 (9th Cir.1998).

■ The Confrontation Clause forbids the use of hearsay against a criminal defendant at trial unless the evidence "falls within a firmly rooted hearsay exception" or otherwise contains "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Supreme Court held in *Lilly* that the admission of a non-testifying accomplice's confession violated the defendant's right to confront his accuser notwithstanding the hearsay exception for declarations against penal interest. *Lilly*, 527 U.S. at 139, 119 S.Ct. 1887.

In *Lilly*, the defendant (Benjamin Lilly), his brother (Mark Lilly), and his brother's roommate (Gary Barker) committed a series of crimes—robberies, burglaries, and a car-jacking. The victim of the car-jacking was murdered. The police obtained a confession from Mark, who, although implicating himself in the robberies, stated that it was Benjamin and Barker who got the guns. He also told police that it was Benjamin who instigated the car-jacking and shot the victim, and that he (Mark), "didn't have nothing to do with the shooting." *Id.*

at 121, 119 S.Ct. 1887. The trial judge admitted Mark's taped confession against Benjamin on the grounds that Mark's out-of-court statement fell within an exception to the hearsay rule for statements against penal interest.

A plurality of the Supreme Court reversed. The Court first noted that a statement against penal interest did not qualify as a "firmly rooted" hearsay exception. *Id.* at 126–27, 119 S.Ct. 1887. "[T]he simple categorization of a statement as a 'declaration against penal interest' ... defines too large a class for meaningful Confrontation Clause analysis." *Id.* at 127, 119 S.Ct. 1887 (internal quotation omitted).

A plurality of the Court also found that the accomplice statement at issue lacked "particularized guarantees of trustworthiness" regardless of whether it was corroborated by other evidence. *See id.* at 137–38, 119 S.Ct. 1887. As the Court said, "[t]o be admissible under the Confrontation Clause ... hearsay evidence ... must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.* at 138, 119 S.Ct. 1887 (quotations omitted).

Furthermore, the Court said:

It is abundantly clear that neither the words that Mark spoke nor the setting in which he was questioned provides any basis for concluding that his comments regarding petitioner's guilt were so reliable that there was no need to subject them to adversarial testing in a trial setting. Mark was in custody for his involvement in, and knowledge of, serious crimes and made his statements under the supervision of governmental authorities. He was primarily responding to the officers' leading questions, which were asked without any contemporaneous cross-examination by adverse parties. Thus, Mark had a natural motive to attempt to exculpate himself as much as possible. Mark also was obviously still under the influence of alcohol. Each of these factors militates against

finding that his statements were so inherently reliable that cross-examination would have been superfluous.

*Id.* at 139, 119 S.Ct. 1887 (citations omitted).

In this case, Boone asserts that the use of Williams's statement at trial violated his Confrontation Clause rights under *Lilly*. Boone argues that since Williams was suspected of masterminding the robberies, he had a motive to shift the blame to Boone and therefore, like the confession in *Lilly*, Williams's taped statement lacked sufficient indicia of trustworthiness.

However, Boone fails to acknowledge the significant distinctions between *Lilly* and this case. *Lilly* dealt with a confession obtained by police during an in-custody interrogation. *Id.* at 139, 119 S.Ct. 1887. Here, the taped conversation between Williams and his girlfriend occurred in what appeared *to Williams* to be a private setting and in which, as far as *he* knew, there was no police involvement. He simply was confiding to his girlfriend, unabashedly inculpating himself while making no effort to mitigate his own conduct. The circumstances and setting of Williams's statements distinguish this case from *Lilly*, as does the *content* of Williams's statements. It was unselfconsciously self-incriminating and not an effort to shift the blame.

At least two other circuit decisions subsequent to *Lilly* have recognized this distinction. In *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir.2000), for example, the court upheld the admission of hearsay testimony which inculpated both the declarant and the defendant.

We find that the circumstances surrounding Polizzi's [the declarant's] statements in this case indicate that the statements were trustworthy, particularly in light of the fact that Polizzi's statements *were made to his son in confidence, rather than to the police* or to any other authority for the purpose of shifting the blame to Tocco.

*Id.* at 416 (emphasis added); *see also United States v. Papajohn*, 212 F.3d 1112, 1119 (8th Cir.2000) (upholding use of hearsay at trial and stating that because the declarant was not arrested for a crime, "[t]he obvious incentive that the captured accomplice in *Lilly* had to shift blame is not present in our case").[4]

Because the circumstances attendant to the making of Williams's self-incriminating statements provide a particularized guarantee of trustworthiness, the Confrontation Clause is satisfied and the statements were properly received in evidence under Rule 804(b)(3), Federal Rules of Evidence.

AFFIRMED.

---

4. These circuit decisions are consistent with the view expressed by Chief Justice Rehnquist. The Chief Justice noted that prior Supreme Court case law had "recognized that statements to fellow prisoners, like confessions to family members or friends, bear sufficient indicia of reliability to be placed before a jury without confrontation of the declarant." *Lilly*, 527 U.S. at 147, 119 S.Ct. 1887 (Rehnquist, C.J., concurring).