UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos AGUILAR, aka Cheeks,
Defendant–Appellant.

No. 00–50502.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 2002.

Filed July 8, 2002.

Richard D. Rome, Van Nuys, CA, for the defendant-appellant.

Michael Lowe, United States Attorney's Office, Los Angeles, CA, for the plaintiff-appellee.

Before TROTT, THOMAS, and WARDLAW, Circuit Judges.

---

1. All other issues raised by Aguilar's appeal are addressed in a memorandum disposition

## OPINION

TROTT, Circuit Judge.

After a two-day trial, a jury convicted Carlos Aguilar ("Aguilar") of conspiring to distribute and to aid and abet the distribution of controlled substances. He was sentenced to 121 months. On appeal, Aguilar contends that the district court violated his rights under the Confrontation Clause by admitting the guilty pleas of non-testifying codefendants as evidence of the existence of a drug conspiracy. We disagree. We hold that the admission of an unavailable codefendant's guilty plea does not violate an accused's rights under the Confrontation Clause when that plea (1) is made under oath and with the representation of counsel, (2) is entered personally before a district judge who accepts the plea under Rule 11 of the Federal Rules of Criminal Procedure, (3) includes wholly self-inculpatory remarks, and (4) subjects the declarant to a risk of substantial imprisonment. A guilty plea that meets these criteria possesses particularized guarantees of trustworthiness sufficient to justify depriving the defendant of the opportunity to confront and cross-examine the declarant. Finding these criteria satisfied in this case, we affirm.[1]

## BACKGROUND

A federal grand jury returned a second superseding indictment charging Aguilar with conspiracy to possess with intent to distribute and to aid and abet the distribution of controlled substances, including cocaine, cocaine base (crack), heroin, and methamphetamine ("meth"), in violation of 21 U.S.C. § 846.

Before trial, the government filed a motion in limine to admit self-incriminating

filed contemporaneously with this opinion.

statements from the guilty pleas of six codefendants who had been indicted for conspiracy with Aguilar. These pleas had been tendered and accepted by the same district judge pursuant to Rule 11, the rule meant to ensure that a guilty plea is knowing and voluntary. The government argued that the statements, though hearsay, were admissible under Federal Rule of Evidence 804(b)(3), the "statement against interest" exception to the hearsay rule. The district court granted the government's motion over Aguilar's objection that the admission of the statements violated his rights under the Confrontation Clause. Not having prevailed on his objection, Aguilar agreed with the government on identical, one-sentence stipulations concerning each codefendant's plea: *e.g.*, "the parties agree that Manuel Torres, aka Tati, has pled guilty to being a member of a conspiracy involving Jesse Detevis, aka Shady, which involved narcotics trafficking." After reading each stipulation into the record during trial, the court instructed the jury:

> You may consider evidence of the guilty plea ... to prove that there was a conspiracy, but not to prove that Defendant Aguilar was a member of that conspiracy. You may not infer from that the Defendant Aguilar was guilty of being a member of that conspiracy merely from the fact a codefendant or another person pled guilty.

> The statements that a codefendant or another person made to plead guilty does [sic] not constitute an admission of any nature against the Defendant Aguilar. His guilt has to be established by his own acts, statements and conduct, as well as those of his alleged coconspirators during the conspiracy.

At the close of trial, the district court repeated its admonition to the jury concerning the limited evidentiary use of the stipulations. The jury returned a guilty verdict that same day. Aguilar appeals, contending that the alleged Confrontation Clause violation constitutes reversible error. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

■ We review alleged violations of the Confrontation Clause de novo. *United States v. Boone*, 229 F.3d 1231, 1233 (9th Cir.2000), *cert. denied*, 532 U.S. 1013, 121 S.Ct. 1747, 149 L.Ed.2d 669 (2001).

## DISCUSSION

### I The Sixth Amendment's Confrontation Clause

The district court admitted the guilty pleas of Aguilar's former codefendants under Federal Rule of Evidence 804(3)(b), the "statement against interest" exception to the hearsay rule. Rule 804(3)(b) provides that where a declarant is unavailable, his statement is not excluded as hearsay if the statement, when made, subjected him to criminal liability such that "a reasonable person in the declarant's position would not have made the statement unless believing it were true." The parties agreed that each codefendant would invoke his Fifth Amendment privilege if called to testify, thus making him "unavailable" as required under Rule 804(3)(b). *See* Fed.R.Evid. 804(a); *California v. Green*, 399 U.S. 149, 168 n. 17, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Whelchel v. Washington*, 232 F.3d 1197, 1204 (9th Cir.2000).

■ Aguilar does not dispute that the guilty pleas qualify as statements against penal interest, but claims their admission violates the Confrontation Clause. The Confrontation Clause guarantees that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const.

amend. VI. The Clause serves to ensure "the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). With good reason, then, we consider the right of confrontation "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

A serious question arises when, as in the case before us, the government seeks to admit an unavailable declarant's out-of-court statement against the accused: May a court, consistent with the Confrontation Clause, deprive the accused of his right to compel a witness against him "to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'"? *Green,* 399 U.S. at 158, 90 S.Ct. 1930 (quoting 5 J. Wigmore, Evidence § 1367 (3d ed.1940)).

▇ Under certain circumstances, the answer is yes: "[O]nce a witness is shown to be unavailable, 'his statement is admissible only if it bears adequate "indicia of reliability."'" *Idaho v. Wright,* 497 U.S. 805, 814–15, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (quoting *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). Such indicia exist when the evidence (1) falls within a "firmly rooted hearsay exception," or (2) contains such "particularized guarantees of trustworthiness" that "adversarial testing would add little to its reliability." *Id.* at 821; *Roberts,* 448 U.S. at 66; *Boone,* 229 F.3d at 1233. As explained below, we conclude that the codefendants' disputed guilty pleas contained the necessary guarantees of trustworthiness to justify their admission. Thus, we need not address whether

the codefendants' guilty pleas fall within a "firmly rooted" exception.

## II The Guilty Pleas' Particularized Guarantees of Trustworthiness

▇ We assess whether a statement possesses particularized guarantees of trustworthiness under the "totality of the circumstances." *Wright,* 497 U.S. at 819, 110 S.Ct. 3139. In so doing, we consider "only those [circumstances] that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.; Webb v. Lewis,* 44 F.3d 1387, 1391 (9th Cir.1994). Thus, a hearsay statement's reliability must flow from its "inherent trustworthiness," not from "bootstrapping on the trustworthiness of other evidence." *Wright,* 497 U.S. at 823, 110 S.Ct. 3139; *Swan v. Peterson,* 6 F.3d 1373, 1380 (9th Cir.1993).

We have considered the admission of an unavailable codefendant's hearsay statement vis à vis the Confrontation Clause on several occasions. *See, e.g., Whelchel,* 232 F.3d at 1204; *Boone,* 229 F.3d at 1233–34. Until now, however, our Circuit has not addressed the Confrontation Clause implications of admitting a co-conspirator's guilty plea against a defendant as evidence of the conspiracy's existence. Both the Second and Seventh Circuit have considered this issue, however, and we find their analyses persuasive.

In *United States v. Gallego,* 191 F.3d 156 (2d Cir.1999), for example, the Second Circuit reviewed the admissibility of an unavailable codefendant's plea allocution. The court found the statement sufficiently reliable to justify its admission over the defendant's Confrontation Clause objection because: (1) the declarant "faced a significant and imminent prison sentence as a direct result of his allocution;" (2) the declarant "delivered the allocution under oath and before a judge;" (3) the district

court ensured the trustworthiness of the evidence by "admitt[ing] only self-inculpatory portions of the allocution;" and (4) the district court "limited the impact of those excerpts by instructing the jury to consider [the declarant's] allocution only as evidence of a conspiracy." *Id.* at 168.

The Second Circuit considered a nearly identical situation in *United States v. Moskowitz*, 215 F.3d 265 (2d Cir.2000) (per curiam). In that case, Moskowitz and his codefendant, Kirk, were charged with securities fraud violations. Kirk pleaded guilty; Moskowitz went to trial. *Moskowitz*, 215 F.3d at 268. At Moskowitz's trial, the district court admitted Kirk's plea allocution—redacted of all portions where Kirk had shifted blame—as evidence that a conspiracy had existed, but not of Moskowitz's participation in that conspiracy. *Id.* at 268–69. Relying on the reasoning in *Gallego*, the Second Circuit held that the plea boasted particularized guarantees of trustworthiness because it (1) subjected defendant to a lengthy prison term, even if "made in the hope of obtaining a more lenient sentence;" (2) was made under oath; and (3) was accompanied by a jury instruction prohibiting consideration of the plea as evidence of Moskowitz's guilt. *Id.; see also United States v. Petrillo*, 237 F.3d 119, 123 (2d Cir.2000) (admitting guilty plea allocution under reasoning of *Gallego* and *Moskowitz*).

Recently, the Seventh Circuit considered the admissibility of guilty plea allocutions in *United States v. Centracchio*, 265 F.3d 518 (7th Cir.2001). The district court determined the allocution was admissible under Rule 804(3)(b) as a statement against interest by an unavailable declarant. (As in our case, the declarant in *Centracchio* would have invoked his Fifth Amendment privilege, and thus, was deemed unavailable to testify.) After citing *Gallego* and *Moskowitz* with approval, the court held:

[T]he mere fact that [declarant] may have pleaded guilty to get a "good deal" does not mean he lied about his actual guilt.... [T]he fact that the statements were genuinely self-inculpatory and did not seek to downplay [declarant's] own role, that [declarant] had the benefit of counsel, that he was under oath in front of a federal judge, with no promise of leniency, and risking a prison term, and the limiting instruction proposed by the government, constitute sufficient guarantees of trustworthiness such that the plea allocution's admission into evidence will not violate the defendants' rights under the ... Confrontation Clause.

*Id.* at 529–30.

 We adopt the reasoning of the Second and Seventh Circuits and hold that the six guilty pleas at issue before us bear particularized guarantees of trustworthiness sufficient to merit their admission under the Confrontation Clause. First, and most obvious, the plea agreements derive considerable reliability as statements against penal interest. *See Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) ("[R]easonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true."). The six declarants embraced potentially long prison terms by pleading guilty, and while each may have hoped for leniency at sentencing, the evidence suggests no consideration was promised in return for those pleas.

We are persuaded as well by the entirely self-incriminating nature of the evidence. Each codefendant admitted his participation in terms that did not attempt to shift the responsibility for his guilt to another. *See id.* at 605, 114 S.Ct. 2431 (O'Connor, J., concurring) ("[T]he very fact that a statement is genuinely self-

inculpatory ... is itself one of the 'particularized guarantees of trustworthiness' that makes a statement admissible under the Confrontation Clause."). Therefore, we approach these statements without the usual suspicion cast upon statements which attempt to foist blame or minimize responsibility. *See Lilly v. Virginia,* 527 U.S. 116, 131–33, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion) (finding "inherently unreliable" accomplice testimony that inculpates both the accomplice and the defendant); *Lee v. Illinois,* 476 U.S. 530, 545, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) ("[A] codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another.").

That the guilty pleas were made under oath, with the advice of counsel, and in the presence of the same district judge who presided over Aguilar's trial further enhances their veracity. While presiding over the hearings in which Aguilar's codefendants changed their pleas from "not guilty" to "guilty," Judge Matz adhered to the requirements of Rule 11. He thoroughly questioned each codefendant to ensure that he understood the nature of the charges to which he pled guilty and the constitutional rights he was giving up by entering a plea. *See* Fed.R.Crim.P. 11(c). In addition, Judge Matz "address[ed] the defendant[s] personally in open court, determining that the[ir] plea[s] [were] voluntary and not the result of force or threats or of promises apart from a plea agreement." *See* Fed.R.Crim.P. 11(d). Satisfied that the co-conspirators were not improperly induced, Judge Matz accepted their pleas. Under these circumstances, Judge Matz was well-positioned to assess the credibility of Aguilar's codefendants. *Cf. Whelchel,* 232 F.3d at 1205 (according no deference to trial judge's opinion of declarants' credibility because judge had no opportunity to personally observe them make their statements).

■ Finally, we note the district court carefully instructed the jury that the codefendants' guilty pleas were evidence only of the existence of a drug conspiracy, and not of Aguilar's participation therein. Similar limiting jury instructions were used in *Gallego, Moskowitz,* and *Centracchio,* and are certainly necessary to guard against the possible misuse of evidence by the jury. *See United States v. Halbert,* 640 F.2d 1000, 1006 (9th Cir.1981) (per curiam) (holding that "[e]vidence of [codefendants'] guilty pleas is amenable to misuse," a danger that "may be averted only by adequate cautionary instructions"). Indeed, we have observed that "[e]ven where the government's use of a codefendant's guilty plea is permissible, .... the jury should be told in unequivocal language that the plea may not be considered as evidence of a defendant's guilt." *United States v. Smith,* 790 F.2d 789, 793 (9th Cir.1986) (internal quotation omitted). We disagree with the Second and Seventh Circuits, however, that such curative language somehow bears on the inherent trustworthiness of the hearsay statements. As mentioned above, guarantees of trustworthiness depend on only the circumstances *surrounding the making* of a statement. *Wright,* 497 U.S. at 819, 110 S.Ct. 3139 (emphasis added). A jury instruction that may come months or years after a codefendant's guilty plea is not a "circumstance surrounding the making of a statement." *Id.* Though we depart from the Second and Seventh Circuits in this minor regard, we otherwise approve of and adopt their Confrontation Clause analyses discussed in this opinion.

## CONCLUSION

Our decision does not create a per se rule permitting the admission of a codefendant's guilty plea, even one that is entirely self-inculpatory. Like other courts to consider this issue, we stress the importance of focusing on the circumstances surrounding the making of the guilty plea. Here, each codefendant, (1) under oath and represented by counsel, (2) submitted personally to the district judge (3) entirely self-inculpatory guilty pleas satisfying the requirements of Rule 11(4) which subjected the codefendant to a risk of substantial imprisonment. Under these circumstances, the guilty pleas manifested particularized guarantees of trustworthiness, and, consequently, their admission did not violate Aguilar's rights under the Confrontation Clause.

**AFFIRMED.**