**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2554
_____

UNITED STATES OF AMERICA

v.

SUMO DUKULAH,
                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-21-cr-00246-001)
District Judge: Honorable Gerald A. McHugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
September 5, 2024
_____

Before: JORDAN, HARDIMAN, and PORTER
*Circuit Judges*.

(Filed: September 5, 2024)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PORTER, *Circuit Judge.*

Sumo Dukulah challenges his jury conviction for lying on his naturalization application, arguing that (1) the District Court's admission of his previous conviction for sex offenses into evidence, offered to prove that he committed the offenses of which he was convicted, violated the Sixth Amendment's Confrontation Clause, and (2) the evidence at trial was insufficient to support the jury's verdict. We will affirm.

I

Dukulah, a native of Liberia, applied for naturalization as a United States citizen in 2011. In his application, he was asked whether he had "ever committed a crime or offense for which [he was] not arrested." App. 29 (emphasis omitted). He checked a box answering "No." *Id.* He affirmed the truth of that response during an in-person interview with an immigration officer. And at his naturalization ceremony in 2012, before he was sworn in as a United States citizen, he again checked a box answering "No" to a similar question. App. 32.

In 2013, Dukulah was arrested for raping his wife's niece. A jury convicted him of several sex offenses in Pennsylvania state court. The offenses of which Dukulah was convicted covered sex acts beginning in 2004, long before Dukulah sought naturalization and swore that he had not committed crimes for which he had not been arrested. Dukulah's niece testified at his trial that he had raped her, and his lawyer cross-examined her.

In 2021, a federal grand jury indicted Dukulah for one count of "knowingly procur[ing]" naturalization "contrary to law" through false statements, 18 U.S.C.

2

§ 1425(a), and one count of "knowingly . . . procur[ing] . . . naturalization" despite not being "entitled thereto" for lack of good moral character. *Id.* § 1425(b). At trial, the government offered a record of Dukulah's state conviction into evidence, without objection, to prove that Dukulah had committed crimes that he did not disclose on his naturalization application. The government did not call Dukulah's niece as a witness at this trial. Dukulah testified that he did not commit the crimes of which he was convicted in state court, and three other witnesses testified that he is honest and law-abiding. A jury convicted Dukulah of both naturalization offenses.

Dukulah appealed.

## II

We have jurisdiction under 28 U.S.C. § 1291. Because Dukulah did not object to the admission of his state conviction into evidence, we review its admission for plain error. *See* Fed. R. Crim. P. 52(b). Regarding the sufficiency of the evidence, we "view[] the evidence in the light most favorable to the prosecution" and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

## III

### A

To succeed on his Confrontation Clause argument, Dukulah must show that the District Court's admission of his state conviction was "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alteration in original).

Dukulah cannot satisfy the second requirement because any Confrontation Clause violation is not "clear under current law." *Olano*, 507 U.S. at 734.

The Confrontation Clause guarantees Dukulah's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has held that the Clause's protections apply to "testimonial" out-of-court statements. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). If a witness's statement is testimonial and he does "not appear at trial," it is admissible only if two independent requirements are satisfied: "he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 54.

Dukulah argues that the admission of his state conviction did not satisfy these requirements. First, Dukulah describes his state conviction as "testimonial" because it was offered to prove that he committed the crimes of which he was convicted. *See Kirby v. United States*, 174 U.S. 47, 55–56 (1899) (applying the Confrontation Clause where a co-conspirator's theft conviction was offered to prove that the defendant received stolen property); *Davis v. Washington*, 547 U.S. 813, 824–25 (2006) (citing *Kirby* as an example where "Confrontation Clause jurisprudence was . . . applied . . . in the testimonial context"). Second, Dukulah argues that his state conviction was based on his niece's testimony, but she did not testify at Dukulah's naturalization trial and the government failed to show that she was unavailable. Under *Crawford*, Dukulah argues that "this failure alone precludes admissibility," regardless of his prior cross-examination of his niece in state court. *United States v. Causevic*, 636 F.3d 998, 1004 (8th Cir. 2011).

Unfortunately for Dukulah, neither we nor the Supreme Court has held that the Confrontation Clause is violated on similar facts: where the government offers a defendant's prior conviction to prove that the defendant committed the crimes of which he was convicted, and the defendant had the opportunity to cross-examine the government's witnesses at the prior trial, but the government does not call those witnesses to testify again despite their availability. Of course, "lack of precedent alone will not [categorically] prevent us from finding plain error." *United States v. Jabateh*, 974 F.3d 281, 299 (3d Cir. 2020) (internal quotation marks and quoted source omitted). But in "a matter of first impression" like this, *United States v. Benjamin*, 711 F.3d 371, 379 (3d Cir. 2013), we find plain error only if "'absolutely clear' legal norm[s]" compel us to do so. *Jabateh*, 974 F.3d at 299 (quoting *United States v. Nwoye*, 663 F.3d 460, 466 (D.C. Cir. 2011)).

Dukulah's Confrontation Clause argument depends on a premise that does not derive from absolutely clear legal norms. It is not absolutely clear that his state jury conviction qualifies as a "testimonial" hearsay statement under *Crawford*, which did not list prior jury convictions as examples of testimonial statements. 541 U.S. at 68 (listing "prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and statements made during "police interrogations" as examples, without offering a "comprehensive definition of 'testimonial'"). While the Supreme Court has described *Kirby* as involving a "testimonial context," *Davis*, 547 U.S. at 824, *Kirby* involved evidence, other than a jury conviction, that was clearly testimonial—the guilty pleas of the defendant's co-conspirators. 174 U.S. at 49; *see Crawford*, 541 U.S. at 64 (describing

5

a "plea allocution" as "plainly testimonial" (citing *United States v. Aguilar*, 295 F.3d 1018, 1021–23 (9th Cir. 2002)). Thus, we do not read *Davis* to clearly state that a prior jury conviction is testimonial. And even if it did, it did so only in dicta. While "we cannot lightly ignore the force of Supreme Court dicta," *Morrow v. Balaski*, 719 F.3d 160, 169 (3d Cir. 2013) (en banc) (emphasis omitted), dicta does not constitute an absolutely clear legal norm that compels reversal for plain error. *See United States v. Salas*, 889 F.3d 681, 687 (10th Cir. 2018) ("We . . . have declined to find plain error where a previous case addressed the relevant issue merely in dicta.").

Moreover, it would be reasonable for a court to conclude that prior jury convictions are not testimonial statements under *Crawford*. Dukulah argues that his state conviction was inadmissible because his niece was available to testify. But to the extent that Dukulah's state conviction was a statement, it was a jury's statement that Dukulah committed sex crimes, not his niece's statement that he raped her. By Dukulah's logic, the government would be required to show each jury member's unavailability to testify— or call each available juror to testify regarding the verdict—for his state conviction to be admissible. *Crawford*, 541 U.S. at 59 (focusing on whether "the *declarant* is unavailable" (emphasis added)). This implication of Dukulah's argument might conflict with "the weight of authority" holding that "a juror cannot impeach his own verdict," given "the public injury which would result if jurors were permitted to testify as to what had happened in the jury room." *McDonald v. Pless*, 238 U.S. 264, 267 (1915); *see also* Fed. R. Evid. 606(b)(1).

Dukulah's interpretation of the Confrontation Clause—focusing on witness unavailability, not juror unavailability—might also prove unworkable in some cases. Suppose that instead of rape, a jury convicted Dukulah of participating in a vast sex trafficking conspiracy, based on the testimony of hundreds of witnesses. *See, e.g.*, *United States v. Fahra*, 643 F. App'x 480, 483–84 (6th Cir. 2016) (describing a conspiracy trial for which the prosecution "named over 200 intended witnesses"). Under Dukulah's interpretation, the Confrontation Clause would require the government to show each witness' unavailability—or call each available witness to testify again—before the prior conviction could be admitted to prove that Dukulah had participated in a conspiracy. We cannot conclude that the Confrontation Clause plainly requires such a massive drain on public resources.

Given the problems with Dukulah's interpretation that we have identified, a court could adopt it only after "a close interpretative inquiry" accounting for those problems. *Jabateh*, 974 F.3d at 299. As a result, the District Court's admission of his prior conviction into evidence was "not a clear, plain error," so "we cannot disturb [his] conviction." *Id.* at 299–300.

B

In the alternative, Dukulah argues that even if his prior conviction was admissible, the evidence was insufficient to sustain the jury's verdict. "[O]ur review for sufficiency is . . . highly deferential, and we will overturn a verdict only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt

7

beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430–31 (3d Cir. 2013) (en banc) (internal quotation marks and quoted source omitted).

We conclude that the jury's verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). Dukulah complains that the prosecution did not proffer evidence other than his prior conviction to prove that he committed the crimes of which he was convicted. He argues that, in effect, the jury impermissibly gave res judicata effect to his prior conviction. *See United States v. Pelullo*, 14 F.3d 881, 892 (3d Cir. 1994) (declaring it unconstitutional to apply the related concept of collateral estoppel against a criminal defendant). But as the government notes, neither the District Court nor the prosecution ordered the jury to give preclusive effect to the rape conviction. Instead, the jury was asked to weigh the state conviction for its evidentiary worth, alongside Dukulah's testimony that he did not commit the crimes of which he was convicted. It was not "irrational" for the jury to conclude from this evidence that Dukulah committed those crimes, such that he lied on his naturalization application and knew himself to be ineligible for naturalization. *Caraballo-Rodriguez*, 726 F.3d at 432. So the jury's verdict "must be upheld." *Id*.

\*     \*     \*

For these reasons, we will affirm the District Court's judgment.