**Millend K. GUPTA, Petitioner–Appellant,**

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, Michael Hunt, and Robin Douthitt, Respondent–Appellees.**

No. 02–2947.

United States Court of Appeals, Seventh Circuit.

Argued March 4, 2003.

Decided April 17, 2003.

Before BAUER, EVANS, and WILLIAMS, Circuit Judges.

ORDER

Millend Gupta sued his former employer, the University of Wisconsin System,

and several of its employees (collectively "defendants"), alleging that they refused to extend his tenure clock and denied him tenure based on his national origin and race in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e–2000e–17. The matter proceeded to a jury trial and defendants prevailed. Gupta's principal challenge on appeal is to a pre-trial ruling of the district court to exclude certain deposition testimony on relevancy grounds. We affirm.

## Facts

Gupta is an Indian male who teaches interior design, architecture, and environmental design at the college and graduate levels. He has a master's degree in architecture and a Ph.D. in environmental design. In 1990 he began teaching at the University of Tennessee in a tenure-track position. In 1996, however, Gupta left Tennessee with his wife so that she could pursue academic opportunities elsewhere, and he was never considered for tenure. Gupta moved with his wife to Milwaukee, Wisconsin, where in 1997 the University of Wisconsin hired him in a tenure-track position to teach in the Department of Environment, Textiles, and Design at the School of Human Ecology. From 1997 through 2000 Gupta worked as an assistant professor and taught classes at both the Madison and Milwaukee campuses. (In Milwaukee, Gupta taught classes at the School of Architecture and Urban Planning.)

When he was hired, Gupta was informed by the Dean of the School of Human Ecology that university policy required him to be reviewed for tenure after three years—which in Gupta's case meant the conclusion of the 1999–2000 academic year. (Professors with no previous teaching experience typically were not reviewed for tenure for six years, but Gupta was not eligible for this longer tenure clock because of his six years' experience at the University of Tennessee.) At the time, the Dean also informed Gupta that the Faculty Senate was attempting to modify the applicable policies and that Gupta's tenure clock could be extended once that modification occurred. When the policy was modified in 1999, Gupta sought to extend his tenure clock until the end of the 2002–2003 academic year. The new procedures required Gupta to request an extension from his department first, and, if the vote was favorable, the department would petition the School of Human Ecology's executive committee for the extension.

Both Gupta's department committee and the school's executive committee voted not to extend his tenure clock. The department committee noted that the extension was unnecessary because (1) its review of Gupta's tenure application would fully credit his prior service at Tennessee, and (2) Gupta had no research projects that he needed to complete before his tenure review. The school executive committee provided no reasons for its decision.

After denying Gupta's request to extend his tenure clock, the school executive committee reviewed his application and in March 2000 decided not to award him tenure. Although Gupta repeatedly sought to obtain the committee's reasons, the committee never gave him an explanation.

Gupta timely filed a charge of discrimination with the EEOC and received a right-to-sue letter in September 2001. He filed this suit in December 2001, alleging that the defendants discriminated against him based on his race and national origin when they refused to extend his tenure clock and denied him tenure.

During discovery Gupta deposed Alton J. DeLong, a former colleague and supervisor on the faculty at Tennessee, who testified about Gupta's academic accom-

plishments and abilities. DeLong stated that Gupta had numerous academic strengths, including analyzing statistical evidence, developing interview techniques, and evaluating research data. DeLong also stated that he had observed Gupta's "ability to design research, his problem-solving skills, his ability to comprehend the nature of a research problem, his methodology skills, and his ability to evaluate research data" and noted that "[w]ith regard to all of those [skills] he was very competent and very capable." Finally, DeLong remarked that at Tennessee, Gupta "was making satisfactory progress toward tenure, and there was no question that his work was acceptable." After examining Gupta's recent curriculum vitae, DeLong praised the numerous grants Gupta had received, the many conferences at which he had presented, and the many journal papers he had submitted. Because DeLong lived in Tennessee and could not appear at the trial, the parties worked together to prepare a narrative deposition summary of DeLong's testimony.

Before trial, however, the defendants filed a motion *in limine* seeking to exclude DeLong's testimony on relevancy grounds. The defendants argued that because DeLong knew "absolutely nothing" about the University of Wisconsin and had no contact with Gupta while he was working at the university, his opinion was not relevant to the tenure decision. Moreover, the defendants noted, DeLong's testimony did not provide any new information bearing on the tenure decision because the executive committee's consideration of Gupta's candidacy for tenure included Gupta's accomplishments at Tennessee.

The district court agreed with the defendants that the testimony was irrelevant and granted their motion. Judge Shabaz noted that "the [tenure] decision is based upon what the decisionmaker had at the

decisionmaker's time of making the decision" and ruled that DeLong's testimony was irrelevant since the executive committee did not have it at the time they denied Gupta's tenure application. Judge Shabaz explained that this case wasn't any different than countless others where a witness is later found and points out "all the things that [the decisionmaker] should have considered" about "why [Gupta] was so great."

At trial Gupta testified that throughout his three years at Wisconsin, numerous members of the department opined that his tenure clock would likely be extended (to provide him with more time to finish research projects and gain teaching experience) and these colleagues confirmed that he was making sufficient progress towards tenure. Given these comments and the strength of his qualifications, Gupta argued that the decision to deny his tenure clock extension (and to deny him tenure) could only have been due to discrimination. But evidence was also presented at trial by several professors involved with Gupta's tenure decision who testified that they voted against extending Gupta's tenure clock because he lacked the qualifications necessary in teaching, research, and scholarship. These professors also testified that their consideration of Gupta's qualifications for tenure did include a review of Gupta's record at Tennessee.

Hearing that his performance at Tennessee had been taken into account in the tenure review, Gupta apparently sensed that DeLong's favorable testimony could have bolstered his case. Gupta sought reconsideration of Judge Shabaz's earlier decision to exclude DeLong's testimony. Gupta argued that since the tenure committee considered his record at Tennessee, DeLong's statements were in fact relevant to the committee's consideration of his

qualifications. Judge Shabaz denied Gupta's request and reiterated that DeLong's testimony would only "say or imply that [Wisconsin's tenure] decision was wrong" and that it was irrelevant because DeLong "was not part of the [tenure] selection" committee.

### Discussion

On appeal Gupta argues that the district court erred in granting defendants' motion *in limine* to exclude the DeLong testimony on relevancy grounds. Gupta maintains that the testimony was relevant because it undermines the defendants' determination that he was not a qualified tenure candidate and shows that the defendants' reason was actually pretext. Specifically, Gupta contends that the defendants had so "befoul[ed] the view of the plaintiff in the minds of everyone else in the workplace" that "it was impossible for [Gupta] to produce a witness from his department or the School of Human Ecology who was personally involved as a decision maker and disagreed with the decision of the majority." Thus, he argues, the exclusion of the DeLong testimony prevented him from rebutting the defendants' argument that he was not qualified and deprived the jury of evidence necessary to analyze whether the defendants could have honestly concluded that Gupta was not qualified for tenure. Although Gupta claims that he is not asking this court to second-guess the decision of the tenure committee, he nevertheless argues that DeLong's testimony is "relevant to show that [Gupta] is in fact a qualified academician and scholar and has in fact demonstrated the excellence required to be a bona fide candidate for tenure at a place such as Wisconsin or Tennessee."

We review a district court's application of evidentiary rules to the facts for abuse of discretion. *United States v. Centrac-chio*, 265 F.3d 518, 524 (7th Cir.2001). We will not grant a new trial unless the result reached was "inconsistent with substantial justice," Fed.R.Civ.P. 61, and this standard is satisfied only when a "significant chance exists" that the evidentiary error "affected the outcome of the trial." *Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1082 (7th Cir.1998). Because this case reaches this court after Gupta's claims were rejected by a jury, this court reviews the facts in the light most favorable to the verdict. *Schobert v. Ill. Dept. of Transp.*, 304 F.3d 725, 728 (7th Cir.2002).

To prove discrimination, Gupta must show more than that he was a qualified tenure candidate or even that the defendants' reason for denying him tenure was "mistaken, ill-considered, or foolish." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir.2002) (internal citations omitted). He must show that the defendants' reason was a lie. *Id.* For DeLong's testimony to be relevant, therefore, it must advance the inquiry into whether the defendants' lied when they said that they denied Gupta's tenure clock extension (and correspondingly, tenure) because he was not a qualified tenure candidate. *See* F.R.E. 401, 402; *E.E.O.C. v. Ind. Bell Tel. Co.*, 256 F.3d 516, 533 (7th Cir.2001) (en banc) (Flaum, C.J., concurring) (Relevant evidence "need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, but it must in some degree advance the inquiry." (internal citations omitted)). DeLong's testimony, however, discusses only Gupta's qualifications and does not provide any information about the motivations of the department and executive committees. Judge Shabaz thus did not abuse his discretion in excluding it as irrelevant. *See Council 31, Am. Fed'n of State, County, and Mun. Employees, AFL–CIO v. Doherty*, 169 F.3d 1068, 1075 (7th Cir.1999) (upholding district court's

exclusion of testimony that did not rebut employer's stated reasons for taking allegedly discriminatory action).

### Conclusion

Judge Shabaz did not abuse his discretion when he granted the defendants' motion *in limine*. Accordingly, we affirm the district court's judgment.