Opinion issued June 16, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00715-CR

———————————

Walter Zuniga, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 232nd District Court 

Harris County, Texas



Trial Court Case No. 1170302

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Walter Zuniga, of aggravated robbery and assessed
punishment at 15 years’ confinement.  In
three points of error, appellant contends that (1) the trial court erred in
overruling his motion to suppress evidence of identification, (2) the evidence
is legally insufficient, and (3) the trial court erred in admitting hearsay
evidence.  We affirm.

BACKGROUND

On June 9, 2009, Houston Police Officer J. Hines was
dispatched to an apartment complex to investigate a call regarding an aggravated
robbery. The officer learned from one complainant, Marino Rosales, that while
he and two friends, Hosea and Herman, were in the apartment complex parking
lot, a khaki-colored Impala automobile approached. Rosales testified that he
was looking at the Impala and admiring its color when one of its occupants
inquired whether Rosales “had a staring problem.” According to Rosales, three
men got out of the car and put bandanas over their faces. One of the men, later
identified as Jesse Ivey, wore a purple Los Angeles Lakers jersey and red
shoes; this man pointed a gun at Hosea and demanded money and jewelry and later
demanded the same from Herman. A man wearing a white shirt and white baseball
cap, later identified as Robert Garcia, approached Rosales with a gun and
demanded money and jewelry. A third gunman approached Herman. Two other men,
one of whom Rosales recognized as a schoolmate, John Zuniga, remained in the
vehicle. The men returned to the vehicle when Rosales and his friends refused
to hand over money and valuables. As they drove away, shots were fired from the
car at the complainants.

A
tow-truck driver, Tommy Kingston, witnessed the events and saw the Impala leaving
the apartment complex parking lot. He saw gunfire coming from the
passenger-side rear window, where a man wearing a baseball hat fired a revolver
out of the window toward the apartment complex. He followed the Impala and was
able to see the driver, the front seat passenger, and a rear passenger who wore
a baseball hat.  He got a good look at
the driver as the Impala passed his truck going in the opposite direction.  Kingston called authorities and reported the
vehicle’s license plate number. 

Officers
later located the Impala in a driveway of a nearby residence owned by
Conception and Luz Zuniga. The officers noted that the hood of the vehicle was
warm to the touch and observed live ammunition rounds in the back seat. The
officers then approached the home and knocked on the door.  When the Zunigas answered the door, the
officers asked who had been driving the car and was that person at home.  Conception responded that he did not know if
his son was home, but when asked by officers, he permitted them to enter and
search for the suspects.

The
officers located Ivey in one bedroom of the home, pretending to be sleeping
even though he was fully clothed. He was wearing a purple and yellow Los
Angeles Lakers jersey and red athletic shoes; he was perspiring. Officers
located appellant and his brother, John Zuniga, a minor, in another
bedroom.  Both were fully clothed, but
pretending to be asleep. Appellant’s clothing matched that given by the
complainant. Appellant and his brother also had on shoes and were perspiring. A
fourth man, Andrew Salazar, was found hiding in the bathtub.  After the four suspects in the house were
detained, a fifth suspect, Robert Garcia, was discovered hiding on the roof of
the house.  He was wearing a white shirt
and baseball cap.



Officers brought Rosales and his friends to the residence to
view the five individuals detained. Rosales identified Ivey, John Zuniga his
schoolmate, and Robert Garcia.  Although Rosales
saw someone driving the car, he was not able to identify appellant.

Kingston, the tow-truck driver, and also arrived and viewed
the show-up of the suspects.  He
testified that he recognized the driver, front seat passenger, and the man
shooting from the back seat.  He
positively identified appellant as one of the men he had seen in the
Impala.  

No one recognized Andrew Salazar, and he was permitted to
leave. John Zuniga made a statement at the scene implicating a third brother,
Emilio Zuniga, who was never found.

Appellant was tried, along with Ivey, for aggravated
robbery. Neither Rosales nor Kingston could identify appellant at trial.  Garcia pleaded guilty before appellant’s
trial, and in his plea stipulation, he stated that he committed the offense
with appellant and Ivey.  However, in his
presentence investigation and at trial, Garcia claimed that he committed the
offense with Emilio Zuniga and Giovanni Arce.

A jury convicted both appellant and
Ivey, and assessed appellant’s punishment at 15 years’ confinement.[1]

MOTION TO SUPPRESS

          In his first point of error, appellant
contends the trial court erred in overruling his motion to suppress because (1)
the pretrial show-up procedure was impermissibly suggestive and led to a
likelihood of misidentification, and (2) the State failed to prove by clear and
convincing evidence that the Zunigas consented to allow the police enter their
home and search for appellant.

Standard
of Review

We review the trial court’s ruling on a motion to suppress for abuse of discretion. Shepherd v. State,
273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We view the evidence in the light
most favorable to the trial court’s ruling. Wiede v. State, 214 S.W.3d
17, 24 (Tex. Crim. App. 2007) (quoting State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006)). The trial judge is the “sole trier of fact and
judge of credibility of the witnesses and the weight to be given to their
testimony.” St. George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).
The trial court may choose to believe or disbelieve any part or all of a
witness’s testimony. Green v. State, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996)
(citing Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991)).
We defer to a trial court’s express or implied determination of historical
facts, as well as to its application of law to fact questions if those
questions turn on the evaluation of a witness’s credibility and demeanor. See
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We sustain the
trial court’s ruling if it is reasonably supported by the record and correct on
any theory of law applicable to the case. Laney v. State, 117 S.W.3d
854, 857 (Tex. Crim. App. 2003) (citing Willover v. State, 70 S.W.3d
841, 845 (Tex. Crim. App. 2002)).

Show-Up
Identification

          First, appellant contends that the show-up identification
that the police conducted at the scene was impermissibly suggestive and led to
a likelihood of misidentification.  When
faced with a challenge to an out-of-court identification,
a trial court should review all of the circumstances surrounding the identification and determine whether a procedure was unduly
suggestive and, if so, whether it was conducive to an irreparable mistaken identification such that it denied the defendant due process
of law. Webb v. State, 760 S.W.2d 263, 272 (Tex. Crim. App. 1988).  First, the trial court should examine whether
the identification procedure was impermissibly
suggestive. Barley v. State, 906 S.W.2d 27, 33-4 (Tex. Crim. App. 1995).
“Show-up” identifications
may be suggestive; however, even a one man show-up, without more, does not necessarily violate due process:



While it must be conceded that an on-the-scene confrontation
has some degree of suggestiveness, in many situations its use is necessary.
First of all[,] by viewing the alleged perpetrator of the offense immediately
after the commission of the offense, the witness is allowed to test his
recollection while his memory is still fresh and accurate. Additionally[,] the
quick confirmation or denial of identification expedites
the release of innocent suspects. Thus the innocent suspect need not be
transported to jail and detained until a lineup can be constructed. Furthermore[,]
the police would be able to release the innocent suspect and continue their
search for the criminal while he is still within the area and before the
criminal can substantially alter his looks and dispose of evidence of the
crime. Finally, any possible prejudice resulting from such a confrontation can
be exposed by rigorous cross-examination of the witness.

 

Garza v. State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982)
(citations omitted).



If the trial court determines that an out-of-court
identification was impermissibly suggestive, then the court should consider the
factors enumerated in Neil v. Biggers to determine whether the
suggestive procedure created a substantial likelihood of irreparable misidentification.
409 U.S. 188, 199-200, 93 S. Ct. 375, 382-83 (1972). A defendant bears the
burden to show both impermissible suggestion and a substantial likelihood of
misidentification by clear and convincing evidence. See Barley, 906
S.W.2d at 33–34.

Appellant argues that because the complainants were seated
together in the back of a patrol car during the show-up, they could have
influenced each other in their identifications of the suspects.  In Burns
v. State, 923 S.W.2d 233, 237–38 (Tex. App.—Houston [14th Dist.] 1996, pet.
ref’d), the defendant argued that a pretrial identification procedure was
impermissibly suggestive because two witnesses were permitted to view the
line-up in the same room.  The court
rejected the argument that permitting witnesses to view a pretrial identification
together, without more, is impermissibly suggestive.  Id.  

This was not a one man show-up—the police brought out and
lined up all five men discovered in and around the Zuniga’s house. It is true
that Rosales, Hosea, and Herman were together in the back of the patrol car at
the time of the show-up identification procedure. However, Rosales testified
that he and the other complainants did not discuss who to choose.  The police never suggested to the
complainants who they should choose, and, in fact, told the complainants that
the men they sought “may or not” be there. 
But, most importantly, Rosales did not identify appellant either at the
show-up or during trial, and the identifications made by Hosea and Herman were
not admitted at trial.  The only witness
to identify appellant at the show-up was the wrecker driver, Tommy Kingston,
and there is no evidence that he was anywhere near the complainants when he
identified appellant at the scene.

Thus, appellant has failed to carry his burden to show an
impermissibly suggestive pretrial show-up procedure.

 

Consent to Search

          Second, appellant contends that the State failed to prove by
clear and convincing evidence that the Zunigas gave consent for the police to
enter and search their home.  Under the
Fourth and Fourteenth Amendments to the United States Constitution, a search
conducted without a warrant issued upon probable cause is per se unreasonable
limited to a few well-delineated exceptions. U.S.
Const. amend. IV, XIV; Schneckloth v. Bustamonte, 412 U.S. 218,
219, 93 S. Ct. 2041, 2043 (1973). A search pursuant to
voluntary consent is an exception to the requirement that
a search be based upon a warrant supported by probable
cause. Reasor v. State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).  At a suppression hearing, the trial court is
the sole and exclusive trier of fact and judge of the credibility of the
witnesses and their testimony. Maxwell v. State, 73 S.W.3d 278, 281
(Tex. Crim. App. 2002). The validity of an alleged consent
to search is a question of fact to be determined from the
totality of the circumstances. Id. The Texas Constitution requires the
State to show by clear and convincing evidence that the consent was valid. Id. 

      Officer Hines
testified at the suppression hearing that once the police located the Impala
parked in the driveway of a house, he and several other officers walked to the
front door of the house and knocked. 
Conception and Luz Zuniga, appellant’s parents, answered the door.  Hines told them that he would like to come in
and speak with their son.  The Zunigas
gave “specific verbal communication” permitting the officer’s to enter the
house, and showed them to their son’s room in the back of the house.

Officer Kahn testified similarly at the suppression hearing:

[Prosecutor]: Did that officer [Hines] engage in
conversation with [either of the Zunigas]?

 

[Kahn]: Yes. The first officer did
engage in conversation.

 

[Prosecutor]: Okay. Okay. Do you recall
what was said intitially?

 

[Kahn]: The basic premise was if they knew if someone was
driving this vehicle and I think that person responded yes that’s my son’s car
or it was his car and then he said that—the officer asked is your son here 

. . . 

Then he said that yes well—I think he said he didn’t know
whether he was here or not then we asked do you mind if we you know search the
house because we have some potential suspects that might have fled into your
house.

 

[Prosecutor]: Okay. And what was their
response?

 

[Kahn]: They welcomed us in. Said yeah
sure come on in. 

 

In
contrast, both Conception and Luz Zuniga testified that they did not grant the
police permission to enter and search their home.

Faced with contradictory testimony from Officers Hines and
Kahn and the Zunigas, the trial court made the determination to believe the
officers’ testimony over the Zunigas’. We defer to the trial court’s
determination that the Zunigas consented to the search of their home. The
officers’ testimony supports the trial court’s finding that the Zunigas
consented and, thus, we will not disturb it. See Green, 934 S.W.2d at
98-99 (citing Johnson v. State, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990)
(“Since the trial court is the sole fact finder at a suppression hearing, this
Court is not at liberty to disturb any finding which is supported by the
record.”), overruled on other grounds by Heitman v. State, 815 S.W.2d
681 (Tex. Crim. App. 1991)). 

      Regarding
appellant’s complaint that the officers “neglected to obtain a signed consent
to search” we note that written consent to search is not required to satisfy the consent exception to
the warrant requirement. See Montoya v. State, 744 S.W.2d 15, 25 (Tex. Crim.
App. 1987) (“A consent to search
may be oral and still be valid.”), overruled on other grounds by Cockrell v.
State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  Regarding appellant’s complaint that the
officers did not utilize an interpreter, we note that both officers testified
that Conception spoke to them in English and appeared to understand everything
they said.  Also, Conception testified in
English, thus the trial court could have reasonably concluded that he
understood the officers when they talked with him in English.

Accordingly, we hold that the trial court did not abuse its
discretion in overruling appellant’s motion to suppress.  We overrule appellant’s first point of error.

 

SUFFICIENCY OF THE EVIDENCE

          In his second point of error,
appellant contends the evidence is legally insufficient to prove the element of
identity.

Standard of Review

This Court reviews sufficiency-of-the-evidence challenges
by applying the standard enunciated in Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979).  See
Ervin v. State, 331 S.W.3d 49, 52–55 (Tex. App.—Houston [1st Dist.] 2010,
pet. ref’d) (construing majority holding of Brooks v. State, 323 S.W.3d
893, 912, 924–28 (Tex. Crim. App. 2010)). Pursuant to this standard, evidence
is insufficient to support a conviction if, considering all the record evidence
in the light most favorable to the verdict, no rational fact finder could have
found that each essential element of the charged offense was proven beyond a
reasonable doubt. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be
insufficient under the Jackson standard in two circumstances: (1) the
record contains no evidence, or merely a “modicum” of evidence, probative of an
element of the offense, or (2) the evidence conclusively establishes a
reasonable doubt. See Jackson, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct.
at 2786, 2789 n.11, 2789; see also Laster, 275 S.W.3d at 518; Williams,
235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of
the fact finder to resolve conflicts in the testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts. See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the
fact finder resolved any conflicts in the evidence in favor of the verdict and
defers to that resolution, provided that the resolution is rational. See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct
and circumstantial evidence are treated equally; circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt. Clayton,
235 S.W.3d at 778. Finally, the “cumulative force” of all the circumstantial
evidence can be sufficient for a jury to find the accused guilty beyond a
reasonable doubt. See Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App.
2006).

Analysis

          Appellant contends the evidence is
insufficient because Rosales was not able to identify him during either the
pretrial show-up or at trial, and Kingston, the tow-truck driver, was not able
to identify him at trial.  However, a
courtroom identification is not required when other evidence is presented
establishing the culpability of the defendant. 
Conyers v. State, 864 S.W.2d
739, 740 (Tex. App.—Houston [14th Dist.] 1993, pet. ref’d).  Identity may be proven by direct or
circumstantial evidence, and through inferences.  See
Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).        Proof of the accused’s identity through
circumstantial evidence is not subject to a more rigorous standard than is
proof by direct evidence, since both are equally probative.  McGee
v. State, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989).

          Here, there was other evidence, both
direct and circumstantial, establishing appellant’s culpability.  Kingston identified appellant at the show-up
procedure as one of the three men he saw in the car.[2]  The Impala used in the robbery was parked in
the driveway of appellant’s home—it was still warm to the touch and had bullets
in the back seat.  Appellant was
discovered in a bedroom at the Zuniga house; he was pretending to be asleep,
but was fully dressed, wearing shoes, and sweating.  When arrested, appellant was wearing clothes
that matched those described to police by the witnesses.  A codefendant, Robert Garcia, also testified
that when he signed his plea papers, he stipulated that he committed the crime,
along with Ivey and appellant.  From this
evidence, a rational jury could have concluded beyond a reasonable doubt that
appellant was identified as one of the perpetrators of the offense.  

          We overrule appellant’s second point
of error. 

HEARSAY

          In point of error three,
appellant contends the trial court erred by admitting hearsay, i.e., his codefendant’s
plea stipulation, in which he implicated appellant in the crime.

Background

          After the defense rested,
the State, out of the presence of the jury, proposed to offer into evidence a
plea stipulation executed by appellant’s codefendant, Robert Garcia, in which
Garcia stipulated that he had committed the aggravated robbery along with
Jessie Ivey and appellant.  The State
argued that the plea stipulation was admissible as a statement against interest
under Rule of Evidence 803(24).[3]  The trial court voiced some concern that
admitting Garcia’s plea stipulation might violate the Sixth Amendment’s
Confrontation Clause.  Thereafter, to
alleviate the trial court’s concerns about the Confrontation Clause, the State
called Garcia to the witness stand.  He
identified his plea stipulation and the State offered it into evidence as
State’s exhibit 24.  Garcia also
testified about the contents of the plea stipulation.  Specifically, Garcia testified that when he
pleaded guilty, he stipulated that he committed the crime with appellant and
Jessie Ivey.  On cross-examination,
Garcia testified that he actually committed the crime with Emilio Zuniga and
Giovanni Arce and that appellant had nothing to do with it.

Analysis

          Appellant contends that the
trial court erred in admitting State’s exhibit 24, Garcia’s plea
stipulation.  However, State’s exhibit 24 was merely
cumulative of Garcia’s testimony at trial, in which he acknowledged that he
signed a plea stipulation implicating appellant. See Brooks v. State,
990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (providing that admission of
inadmissible evidence becomes harmless error if other evidence proving same fact is admitted
elsewhere without objection); Smith v. State, 236
S.W.3d 282, 300 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d) (stating that
“improper admission of evidence is harmless if the same
or similar evidence is admitted
without objection at another point in the trial”). Furthermore, admitting
Garcia’s plea stipulation, through Garcia’s testimony, actually benefitted
appellant because appellant was able to cross-examine Garcia, who on
cross-examination claimed that appellant had nothing to do with the crime.

Accordingly, we hold that any error in the admission of this
evidence did not affect appellant’s substantial rights. See Tex. R. App. P. 44.2; Smith, 236
S.W.3d at 300 (noting that “admission of inadmissible hearsay is
nonconstitutional error and will be considered harmless if, after examining the
record as a whole, we are reasonably assured that the error did not affect
appellant's substantial rights—i.e.,
did not have a substantial and injurious effect or influence in determining the
jury's verdict”).

We overrule point of error three.[4]

CONCLUSION

          We
affirm the trial court’s judgment.

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]
          Ivey was also convicted, and his
punishment was assessed at 10 years’ confinement.  His conviction was subsequently affirmed by
the Fourteenth Court of appeals in Ivey
v. State, No. 14-09-00698-CR, 2011 WL 303893 (Tex. App.—Houston [14th Dist.]
Jan. 27, 2011, no pet.)





[2]
          There is some conflict in the
record about whether Kingston identified appellant as the driver of the car or
the man he saw shooting out of the window of the car.  However, there is no dispute that Kingston
picked out appellant at the show-up as one of the three men he saw in the
car.  





[3]       A
statement against interest is an exception to the hearsay rule and is:

 

A statement which was at the time of
its making so far contrary to the declarant’s pecuniary or proprietary
interest, or so far tended to subject the declarant to civil or criminal
liability, or to render invalid a claim by the declarant against another, or to
make the declarant an object of hatred, ridicule, or disgrace, that a reasonable
person in declarant’s position would not have made the statement unless
believing it to be true. In criminal cases, a statement tending to expose the
declarant to criminal liability is not admissible unless corroborating
circumstances clearly indicate the trustworthiness of the statement.

 

Tex. R. Evid.
803(24). 

 





[4]
          We express no opinion as to whether admission of the plea stipulation
would have been admissible without Garcia’s accompanying testimony. Several federal circuit courts of
appeals have concluded that a non-testifying co-defendant’s guilty
plea is admissible under the federal statement
against interest exception to the
hearsay rule contained in Fed. R. Evid.
804(b)(3). See, e.g., United States v. Aguilar, 295 F.3d 1018, 1020–23 (9th Cir.), cert.
denied, 537 U.S. 966, 123 S. Ct. 404 (2002); United
States v. Centracchio, 265 F.3d
518, 524–30 (7th Cir. 2001); United States v. Moskowitz, 215 F.3d 265, 268-70 (2d Cir.), cert.
denied, 531 U.S.
1014, 121 S. Ct. 571
(2000). These decisions have been severely criticized. See Mary Cecilia Sweeney-Kwok, Note, An Argument
Against the Arbitrary Acceptance of Guilty Pleas as Statements Against
Interest, 71 Fordham L. Rev. 215, 231-38 (2002).